Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3852 | **DATE** | 2/20/2001 |
| **CASE TITLE** | Johnson Controls, Inc. vs. Exide Corp., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Hawkins' motion to dismiss is granted in part and denied in part. (19-1) Johnson Controls' RICO claim as set forth in Count II is dismissed. Its Count II assertion of tortious interference with prospective economic advantage stands. But in light of the previously announced stay regarding the individual defendants, Hawkins is not now required to Answer Count III.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | FEB 2 1 2001 | |
| | Notified counsel by telephone. | | | date docketed | 45 |
| | Docketing to mail notices. | | | C.S. | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | | 2/20/2001 | |
| | | courtroom | | date mailed notice | |
| SN | | deputy's initials | | SN | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**FEB 2 1 2001**

JOHNSON CONTROLS, INC., et al.,  )
)
        Plaintiffs,  )
)
v.  )  No. 00 C 3852
)
EXIDE CORPORATION, et al.,  )
)
        Defendants.  )

MEMORANDUM OPINION AND ORDER

Johnson Controls, Inc. and Johnson Controls Battery Group, Inc. (collectively "Johnson Controls," treated after this sentence as a singular noun) advance a number of claims against Exide Corporation ("Exide") and three of its former officers: Arthur Hawkins ("Hawkins"), Alan Gauthier ("Gauthier") and Douglas Pearson ("Pearson"). In sum, Johnson Controls charges defendants with having committed commercial bribery in violation of the Robinson Patman Act (15 U.S.C. §13(c)),[1] the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. §1962(c)[2]) and state common law. Hawkins and the other two individual defendants are targeted under RICO and under the state law prohibition against tortious interference with prospective

---

[1] Johnson Controls' Robinson Patman claim against Exide was dismissed on timeliness grounds in this Court's February 2, 2001 memorandum opinion and order ("February 2 Opinion").

[2] Further citations to RICO's provisions will take the form "Section --," thus omitting repeated references to Title 18. That usage will be employed in citing the Travel Act, which is also part of Title 18.



business opportunity.[3]

Although Hawkins has moved under Fed. R. Civ. P. ("Rule") 12(b)(6) to dismiss both of those charges, n.3 explains why this opinion need speak only to the Count II RICO claim. Because Johnson Controls has not adequately alleged that Hawkins engaged in a pattern of racketeering activity, his dismissal motion is granted as to that claim. If Johnson Controls believes it can cure that flaw, its counsel must return to the drawing board for that purpose.

## Facts[4]

This action arises out of the assertion that several of Exide's agents bribed Gary Marks ("Marks"), an agent of Sears, Roebuck & Co. ("Sears"), to procure a battery contract that Johnson Controls, a competitor of Exide, bid for but lost. Hawkins, who until October 14, 1998 was Exide's President and Chief Executive Officer and a member of its Board of Directors

---

[3] In part the February 2 Opinion also denied Exide's motion to dismiss the Count III tortious interference claim. Because Hawkins' arguments on that score are identical to those raised by Exide and rejected by this Court, there is no need to address those arguments again. Count III does state a claim against Hawkins for tortious interference with prospective business opportunity.

[4] Because for Rule 12(b)(6) purposes this opinion must credit Johnson Controls' allegations as true, what follows in the Facts section is drawn from the Complaint (which is cited simply "¶ --"). Hence the recital omits "Johnson Controls alleges" or any comparable locution, although this Court has not of course made any findings (as the caption Facts might otherwise suggest).

2

(¶8), was one of the participants in the bribery scheme.

Because this opinion will assume familiarity with the February 2 Opinion, it will eschew any detailed repetition of the Complaint's allegations. But there are a few aspects of the Complaint that need to be highlighted because they relate particularly to the RICO claim.

Johnson Controls' RICO claim is predicated on a single series of bribery payments to Marks made with the intention of obtaining and retaining the Sears' battery supply contract (¶68). Marks received at least eight such payments between March 1995 and January 1996 (¶¶52, 59, 66), and the individual defendants played a part in directing those payments to be made (though the Complaint fails to provide any specifics about what role each defendant played in the scheme).

It is a reasonable inference from the Complaint that the bribery scheme was devised in "early 1994" (¶¶44-48). During that period Exide employee Joseph Calio ("Calio") met with Marks at Sears' offices in Hoffman Estates, Illinois (¶46). During the course of their private conversations Marks told Calio that he wanted Exide to pay him for influencing Sears to award the business to Exide (¶47). At some later point during the negotiations Calio learned that Hawkins had "led Marks to believe that Exide would pay Marks $20,000 per month if Exide obtained [Sears'] battery supply contract" (¶48). There are no

3

allegations, however, about any direct communications between Hawkins and Marks during the "early 1994" time period.

Several months after Sears awarded 70% of its battery supply contract to Exide for a term beginning October 1, 1994, Exide began making payments to Marks (¶¶36, 49, 52). Calio made the first two payments to Marks (in March and April 1995) by traveling to Illinois from out of state and delivering the cash in person. Once more the precise role that Hawkins played in the making of those payments is not entirely clear, as Johnson Controls alleges only that "Exide, through Hawkins, Gauthier and Pearson directed Calio" to deliver the payments (¶¶52, 59).

After making the first two payments to Marks in person, Calio expressed concern about continuing to deliver bribes (¶63). To that Hawkins replied, "I do it every day of the week. What are you worried about?"[5] From that point forward Exide ceased to make in-person payments to Marks, instead making at least six later payments by wire transfer to Marks' Illinois corporation, DG Consulting (¶66). Again each individual defendant's role is left unclear: Johnson Controls alleges that "Exide, through Hawkins, Gauthier and Pearson, caused at least six payments" to be paid to DG Consulting (¶66).

---

[5] In attempting to defend its RICO claim, Johnson Controls has placed a great deal of weight on that lone allegation. But as discussed later in this opinion, that allegation by itself is insufficient to support the notion that Hawkins engaged in a pattern of racketeering activity.

4

Exide's payments to Marks ceased after January 31, 1996, when Marks was transferred to another position within Sears and no longer served as Sears' battery buyer (¶69). Hawkins remained with Exide until October 14, 1998 (¶8). There are no allegations in the Complaint that Hawkins engaged in other acts of bribery or related wrongdoing between January 31, 1996 and the date that he ceased to be employed by Exide.[6]

## Rule 12(b)(6) Standards

At this stage the Complaint's well-pleaded factual allegations are accepted as true, with reasonable inferences drawn in Johnson Controls' favor (Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994)). And no claim is to be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), quoting Conley v. Gibson, 335 U.S. 41, 45-46 (1957)).

## RICO Claim

Johnson Controls targets Hawkins under Section 1962(c):

---

[6] Johnson Controls' Mem. 5 n.1 suggests that Hawkins did commit numerous other violations of the Travel Act, including his bribery of other companies' agents to obtain and maintain those companies' accounts. Johnson Controls has attached several documents to its responsive memorandum, including Exide's answers to interrogatories in other litigation. Cases exemplified by Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) bar the consideration for Rule 12(b)(6) purposes of assertions made only in such memoranda rather than in the Complaint itself.

5

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity or
> collection of unlawful debt.

That provision calls for allegations of a defendant's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" (Goren v. New Vision Int'l, Inc., 156 F.3d 721, 727 (7th Cir. 1998), quoting earlier Supreme Court language that had also been quoted in Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 (7th Cir. 1994)). And those elements cannot simply be alleged in boilerplate fashion, without sufficient supporting facts (Goren, id.).

Here Hawkins challenges Johnson Controls' allegations as to the third and fourth of those elements. In addition he contends that Johnson Controls lacks "standing"--Hawkins' inartful characterization--to bring its RICO claim because the Complaint does not allege that Johnson Controls' injury was a proximate result of the Marks bribery. Those contentions will be addressed in turn.

First, Hawkins contends that Johnson Controls has not met the "pattern of racketeering activity" requirement. In that respect Section 1961(5) requires the commission of at least two "predicate acts": violations of any of the criminal laws enumerated in the Section 1961(1) laundry list (Goren, 156 F.3d

6

at 728).

Johnson Controls bases its RICO claim on defendants' violations of the Travel Act (Section 1952)(¶93), a specifically enumerated predicate act under RICO (United States v. Baker, 227 F.3d 955, 960 (7th Cir. 2000)). Under Section 1952(a):

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to--
>
> > (1) distribute the proceeds of any unlawful activity; or
>
> > \* \* \*
>
> > (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to perform--
>
> > (A) any act described in paragraph (1) or (3) shall be fined under this title, imprisoned for not more than five years, or both....

And bribery in violation of the laws of the state in which it is committed comes within the scope of "unlawful activity" under Section 1952(b). Thus a violation of the Illinois commercial bribery statute that involves an interstate nexus[7] also violates

---

[7] Although it is a reasonable inference from the Complaint that most if not all the payments crossed state lines, neither side has addressed which state's law applies. Because the parties have not raised that choice-of-law issue, the substantive law of the forum is presumptively applicable (see, e.g., Wood v. Mid-Valley Inc., 942 F.2d 425, 426-27 (7th Cir. 1991), reconfirmed in Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998)).

7

the Travel Act (see Perrin v. United States, 444 U.S. 37, 50 (1979)), in turn serving as a RICO predicate act. So the threshold question here is whether Johnson Controls has adequately alleged that Hawkins committed at least two violations of the Travel Act.[8]

> Complaint ¶93 alleges:
>
> At all relevant times, Hawkins, Gauthier and Pearson committed numerous violations of the Travel Act, U.S.C. §1952, by traveling in interstate commerce, causing others to travel in interstate commerce, and using the wires and mails to distribute the proceeds of unlawful activity and to promote, manage, establish, carry on, and facilitate the promotion, management, and carrying on of unlawful activities, specifically bribery in violation of the Illinois commercial bribery statute, 720 ILCS 5/29A-3.

Johnson Controls also alleges that "Exide, through Hawkins, Gauthier, and Pearson" "directed" or "caused" the eight payments to be made to Marks (¶¶52, 59, 66). Hawkins challenges those allegations on essentially two grounds: (1) that the allegations "impermissibly lump" defendants together and (2) that notwithstanding Complaint ¶93, the allegations fail to establish Hawkins' commission of any predicate acts because "directing" or

---

[8] Although Hawkins clearly acknowledges that Johnson Controls bases its RICO claim on defendants' alleged Travel Act violations (see, e.g., H. Mem. 5), at other places he confuses matters by arguing that Johnson Controls' claim is based solely on violations of the Illinois commercial bribery statute (H. R. Mem. 6). It is important to keep that distinction straight, because acts that violate the Illinois commercial bribery statute can serve as predicate RICO acts only if they also involve an interstate nexus such as to violate the Travel Act as well (see Epps v. Money Store, Inc., 1997 U.S. Dist. LEXIS 17964, at *24).

8

"causing" a payment to be made is insufficient to constitute a Travel Act violation.

As to the first of those grounds, a specific showing of Hawkins' involvement in the commission of the predicate acts would of course be necessary if and when the RICO claim were to reach the trial (or summary judgment) stage. But at the present pleading phase of the litigation, such particularity is not required for RICO claims based on Travel Act violations (see Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600, 609 (N.D. Ill. 1997)). Although Hawkins has cited cases requiring more in the way of particularized allegations from plaintiffs, those cases involve fraud-based RICO predicate acts, which trigger the more stringent pleading requirement of Rule 9(b)(see, e.g., Goren v. New Vision Int'l, Inc., 1997 WL 548560, at *4). Blessed with the requisite reasonable inferences, Johnson Controls' allegations suffice to charge Hawkins with the necessary predicate acts.[9]

---

[9] For one thing, it is reasonable to read the allegations lumping the three individual defendants as asserting that each was involved in each payment to Marks. And for another, Johnson Controls' non-invocation of RICO's Section 1962(d) conspiracy provision as a possible theory of liability (something that Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992) and a host of cases since then consistently teach is irrelevant to a Rule 12(b)(6) analysis) does not obscure the reasonable reading that the three individuals were indeed involved in a conspiracy--and that being so, the long-established doctrine of Pinkerton v. United States, 328 U.S. 640 (1946) ascribes each other coconspirator's acts to Hawkins.

9

Nor is there any support for Hawkins' suggestion that he must have made the payments personally to have committed Travel Act violations. As that theory would have it, Hawkins would not have performed a predicate act even if he had specifically requested or authorized an interstate bribe payment to Marks, simply because he did not actually wire the money himself. But all that is needed for commission of a predicate act is participation in that criminal act, and that participation need not be direct (Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990)). So long as Hawkins authorized or requested such payments to be made, and so long as the payments crossed state lines, he would have committed a Travel Act violation--and the Complaint can surely be read to assert that.

Apart from the thus-established element of "racketeering," Hawkins challenges the sufficiency of the allegations to satisfy the "pattern" element. In that regard it is well-settled that the two-predicate-act minimum set out in Section 1961(5) is generally insufficient to establish the requisite pattern (Corley v. Rosewood Care Ctr., Inc. of Peoria, 142 F.3d 1041, 1048 (7th Cir. 1998), citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237 (1989)). In addition to demonstrating that a defendant committed at least two predicate acts, a RICO plaintiff must show both "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal

activity" (H.J., 492 U.S at 239, emphasis in original).

As for the relatively straightforward "relationship" element, Corley 142 F.2d at 1048 reconfirms, quoting H.J., 492 U.S. at 240:

> The predicate acts of racketeering satisfy the relationship test if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."

Johnson Controls' allegations unquestionably meet that relationship test: All of the predicate acts identified in the Complaint relate to one bribery scheme involving the same set of participants and geared toward the identical purpose: obtaining and maintaining the Sears' battery supply contract.

But as is often true of RICO claims, it is the higher hurdle posed by the second component--the continuity prong of the pattern requirement--at which Johnson Controls' present Complaint stumbles and falls. At its core the continuity element relates to the fact that "Congress was concerned in RICO with long-term criminal conduct" (H.J., 492 U.S. at 242). Although the Supreme Court's exposition of the continuity elements in H.J. does not set out an itemized test for evaluating such continuity, it does provide basic guidance on how a plaintiff may establish a pattern of racketeering activity. Corley, 142 F.3d at 1048-49 (citations and internal quotation marks omitted) summarizes that guidance and provides a current picture of the law:

11

> Continuity...is both a closed- and open-ended concept, in that it refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.
>
> Continuity over a closed period may be demonstrated by proof of a series of related predicates extending over a substantial period of time. [H.J.] cautioned, however, that [p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement because Congress was concerned in RICO with long-term criminal conduct. Prior to H.J. Inc., this circuit had looked to five factors in analyzing whether predicate acts are sufficiently continuous to give rise to a pattern of racketeering activity: the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. We have continued to look to [those] factors after H.J. Inc. when considering whether a closed period of related conduct is sufficient to establish continuity.
>
> "Open-ended continuity," by contrast, may involve predicate acts occurring over a short period of time so long as there is a threat that the conduct will recur in the future. Such a threat is present when: (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.

Even read generously, Johnson Controls' allegations do not establish continuity under either of the two concepts. In terms of continuity over a closed period, the allegations identify a limited series of identical predicate acts (eight Travel Act violations) aimed at the single goal of obtaining and maintaining the Sears' battery supply contract. Cases such as Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 663 (7th Cir. 1992)

and others cited there demonstrate that such a scenario does not establish a RICO pattern--and see also such opinions as that of then Judge (now Justice) Breyer in <u>Apparel Art Int'l, Inc. v. Jacobson</u>, 967 F.2d 720, 723-24 (1st Cir. 1992). Nor is the asserted duration of the scheme such as to meet the closed-ended continuity requirement (see, e.g., <u>Vicom</u>, 20 F.3d at 780).

Indeed, Johnson Controls appears to concede as much, for it makes no attempt at all to argue that closed-ended alternative. Instead it urges that it has adequately stated a RICO claim under an open-ended approach because its allegations confirm the required threat of continuity. Such a threat exists "when the plaintiff can show (1) a 'specific threat of repetition,' (2) that the 'predicate acts or offenses are part of an ongoing entity's regular way of doing business,' or (3) that the defendant operates a 'long-term association that exists for criminal purposes'" (<u>Midwest Grinding Co. v. Spitz</u>, 976 F.2d 1016, 1023 (7th Cir. 1992), also quoting <u>H.J.</u>, 492 U.S. at 242-43). Although Johnson Controls essentially concedes that its claim cannot establish open-ended continuity under either the first or third prongs, its Mem. 5 contends that "the allegation that Hawkins regularly conducted business through commercial bribery"[10] is enough to do the job under the second prong.

---

[10] In truth, that contention is based entirely on a single allegation in Complaint ¶64 in which Hawkins is quoted as having said:

13

But the source of that contention in Complaint ¶64 does not alone support the proposition that Hawkins presented "a continuing threat" of criminal activity. Because Johnson Controls must provide "sufficient facts" to establish each element of its RICO claim (Goren, 156 F.3d at 727), the absence of anything other than a conclusory suggestion of such a continuing threat on Hawkins' part dooms the RICO claim in terms of the present Complaint.

One issue briefed by the parties remains, not for the present (in view of the just-announced conclusion) but perhaps for the future: Hawkins' backstop contention that the Complaint lacks allegations of injury proximately resulting from any supposed predicate act, so it fails to establish "standing" to maintain a RICO claim.[11] To establish that a defendant's racketeering activities damaged or injured a civil plaintiff, plaintiff must demonstrate that defendant's actions "proximately caused" the injury[12] (Raybestos Prods. Co. v. Younger, 54 F.3d

---

> I do it every day of the week. What are you worried about?

[11] Quotation marks appear appropriate here because Hawkins' assertion that any plaintiff has failed to prove (or, in the Rule 12(b)(6) context, to plead) one element of a claim--proximate cause--is an odd use of the concept of standing.

[12] This is not to say that all of defendant's acts that are used to establish its potential RICO liability must injure plaintiff for plaintiff to have a viable claim. As explained in Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806, 810 (7th Cir. 1987):

14

1234, 1243 (7th Cir. 1995)) As Raybestos, id. went on to say, quoting Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992):

> "Proximate cause" exists when there is "some direct relationship between the injury asserted and the injurious conduct alleged."

Here Johnson Controls has alleged that "[a]s a result of this pattern of racketeering activity, Johnson Controls became severely disadvantaged and ultimately lost [Sears'] battery supply contract effective October 1, 1994" (¶96). At this pleading stage that is enough to meet that element of a RICO claim.

Although Hawkins urges that the timing of events allows for no possibility that the bribes to Marks actually caused Johnson Controls' loss of the battery supply contract, the allegations in the Complaint do not entirely foreclose such a possibility, and this Court would have to accept Johnson Controls' causation allegation as a pleading matter. To be sure, the same skepticism that this Court has expressed in its February 2 Opinion about

---

> If a plaintiff adequately proves a violation of section 1962 by showing, for example, a pattern of racketeering activity in furtherance of an enterprise, then the plaintiff should recover for whatever damages are directly caused by any part of the acts that add up to a violation.

So if Johnson Controls were later able to establish a pattern of racketeering activity on Hawkins' part (as it has not now done), it could assert a RICO claim and could seek damages from its loss of the Sears' battery supply contract if it could show that the bribes to Marks caused Johnson Controls' injury.

15

Johnson Controls' ability to establish causation on its tortious interference claim is of equal force here. But as with the tortious interference claim, ultimate provability is not now the issue.

### Conclusion

Hawkins' motion to dismiss is granted in part and denied in part. Johnson Controls' RICO claim as set forth in Count II is dismissed. Its Count III assertion of tortious interference with prospective economic advantage stands. But in light of the previously announced stay regarding the individual defendants, Hawkins is not now required to answer Count III.

_____
Milton I. Shadur
Senior United States District Judge

Date: February 20, 2001