# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3852 | **DATE** | 7/25/2001 |
| **CASE TITLE** | Johnson Controls, Inc. vs. Exide Corp. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order. Exide's 12(b)(6) motion is granted and all of Counts V, VI and VII are dismissed with prejudice. (58-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUL 2 5 2001 date docketed | 65 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | LD-7 FILED FOR DOCKETING | |
| | Mail AO 450 form. | | IS docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 JUL 25 PM 2:55 | 7/25/2001 date mailed notice |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHNSON CONTROLS, INC., et al., )
)
Plaintiffs, )
)
v. ) No. 00 C 3852
)
EXIDE CORPORATION, et al., )
)
Defendants. )

DOCKETED
JUL 2 5 2001

MEMORANDUM OPINION AND ORDER

Johnson Controls, Inc. and Johnson Controls Battery Group, Inc. (collectively "Johnson Controls," treated after this sentence as a singular noun) have asserted a number of claims against Exide Corporation ("Exide") and three of its former officers: Arthur Hawkins, Alan Gauthier and Douglas Pearson. Each of Johnson Controls' original Complaint and First Amended Complaint targeted Exide with a claim under the Robinson-Patman Act (15 U.S.C. §13(c)) and with a state common law claim of tortious interference with prospective business opportunity.[1] Johnson Controls' Second Amended Complaint ("SAC") has added several claims against Exide: Defamation (Count V), Trade

---

[1] Neither of those claims is currently at issue. This Court's February 2, 2001 opinion (erroneously reported at 129 F.Supp.2d 1137 as having been issued on January 2, 2001) sustained Johnson Controls' state law claim as viable (id. at 1148). That same opinion (id. at 1146) and a later one (136 F.Supp.2d 945, 947-48) held that Johnson Controls' Robinson Patman claim was time-barred. Johnson Controls has elected to rely on its previous pleading of the dismissed Robinson-Patman Count, but it has reserved the right to amend that claim in the future (J. Motion for Leave To Amend 2-3).

Libel/Product Disparagement (Count VI) and violation of Lanham Act §43(a), 15 U.S.C. §1125(a)(Count VII).

Exide has responded with a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss those newly-raised counts, and the motion is now fully briefed. For the reasons stated in this memorandum opinion and order, Exide's motion is granted and all of Counts V, VI and VII are dismissed.

## Rule 12(b)(6) Standard

For present purposes this Court accepts the SAC's well-pleaded factual allegations as true and draws all reasonable inferences in Johnson Controls' favor (Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994)). And under Rule 12(b)(6) no claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## Background[2]

In 1994 Johnson Controls and its competitors Exide and AC Delco ("Delco") bid for a battery supply contract offered by Sears, Roebuck & Co. ("Sears") (¶¶1, 32, 36). As in its earlier

---

[2] What follows is drawn from the SAC, cited "¶--." For the most part the recital omits such language as "Johnson Controls alleges" because the SAC is treated as gospel--but of course no factual findings are either made or implied here.

2

pleadings, Johnson Controls says that several of Exide's agents bribed Gary Marks ("Marks"), an agent of Sears, to procure that contract.[3] To that conduct the SAC has now added the assertion that besides bribing Marks, during the bidding process Exide made several false representations about its products' capabilities in relation to those of its competitors (SAC ¶¶58-69).

Johnson Controls also adds an unrelated set of claims that arise out of an article in the October 1995 edition of Consumer Reports magazine (published in September 1995)(¶235). That article, entitled "Best Buys in Auto Batteries," rated the batteries of several manufacturers, including Exide and Johnson Controls (J. Mem. App. A; ¶¶235-36). It ascribed superior performance to Exide batteries, a reversal from a 1991 Consumer Reports article that had rated Johnson Controls and Delco batteries more favorably (¶¶228-29, 235-36). Automotive battery customers and consumers--including Penske Auto Centers, which in October 1995 announced its decision to buy Exide batteries based on that month's article--considered and relied on the article in deciding which automotive batteries to purchase (¶¶239-40).

On September 20, 1995 Exide issued a press release, entitled "Consumer Reports Rates Exide Batteries as Best of the Buys," that reported the favorable results of the Consumer Reports

---

[3] For a more extended account of those allegations, see 129 F.Supp.2d at 1140-42.

3

article (¶237). Exide said there that "Consumer Reports gave its highest ratings to batteries manufactured by the Exide Corporation" (E. Mem. Ex. A). Nothing was said in the press release about Johnson Controls or any of Exide's other competitors in the manufacture of batteries (id.).

Because Johnson Controls was suspicious of the results reported in the October 1995 article, it undertook an investigation into the credibility of Kan Laboratories, which had performed the tests that provided the data for that article (¶241). All of the information unearthed during the investigation "led Johnson Controls to suspect that the testing by Kan Laboratories may have been biased" (¶243). But at some point during 1996 Johnson Controls "suspended its investigation of Kan Laboratories' potential bias, having experienced the rejection by Consumer Reports of the evidence of bias in favor of Exide that had been gathered, and the refusal by Exide employees with potential knowledge of the bias of Kan Laboratories to speak to investigators" (¶249).[4]

---

[4] As part of its "rejection," Consumer Reports submitted to Johnson Controls the affidavit of John Kan of Kan Laboratories, which said "all of these tests were performed and reported on a fully objective and unbiased manner and that all of the test data reported and recorded is fully accurate..." and "I hereby categorically deny and reject any claim or charge that I or anyone connected with Kan Laboratories did not accurately, fairly, and objectively report the results of the battery tests" (¶245). As discussed later, Johnson Controls attempts to use that denial as a basis for overcoming its timeliness problems, but its effort is unavailing.

4

On March 27, 2001, when Johnson Controls reviewed the Stipulation of Facts filed a few days earlier in a related criminal proceeding, it learned of the information that has provided the basis of its new claims (¶¶57, 251). That included Exide's misrepresentations to Sears during the bidding process as well as information "that Kan Laboratories acted as an agent, co-conspirator with, or 'front' for Exide to submit intentionally falsified test data to the publishers of Consumer Reports for the October 1995 article" (¶251).

## Defamation and Trade Libel Claims

SAC Counts V and VI assert defamation and trade libel claims against Exide. Those claims rest on two communications: the October 1995 Consumer Reports article and Exide's September 20, 1995 press release. Exide has moved to dismiss both claims on a variety of grounds, including their being time-barred. Because Exide proves to be correct in that respect, this opinion need not address its numerous other contentions, such as the "of and concerning" issue about which this Court recently queried counsel for the parties.[5]

Both parties concur that the issue of timeliness of both

---

[5] But having said that, this Court is constrained to observe that several of the other contentions advanced by Exide appear to be both powerful and highly persuasive, so that Johnson Controls' claims now at issue most likely contain more than one fatal flaw.

claims looks to Illinois law (E. Mem. 8; J. Mem. 14).[6] That means a defamation action[7] must be commenced within one year after the plaintiff's cause of action accrues (735 ILCS 5/13-201). In general the accrual date is the date of publication of the defamatory communication (<u>Schweihs v. Burdick</u>, 96 F.3d 917, 920 (7th Cir. 1996), describing the Illinois rule). Illinois law extends that timetable by applying a discovery rule only in instances (unlike the present situation) where the defamatory material is published in a manner likely to be concealed from the plaintiff, such as via credit reports or confidential memoranda (<u>id</u>. at 921).[8]

Those principles confirm that both of Johnson Controls' defamation-type counts have been advanced several years too late. Both assertedly defamatory communications had been published by September 20, 1995 (¶¶235, 237). Even under the questionable assumption that Johnson Controls' newly-raised defamation-type

---

[6] That is so even though Wisconsin supplies the substantive law applicable to the defamation counts (see <u>Singletary v. Continental Ill. Nat'l Bank & Trust Co.</u>, 9 F.3d 1236, 1242 (7th Cir. 1993)).

[7] Both parties have also treated the trade libel claim as equivalent to a straight defamation claim for limitations purposes.

[8] <u>Singletary</u>, 9 F.3d at 1242 explains why courts regularly look to the same state's law for both the limitations period <u>and</u> the accrual rules, and this case presents no exception. To the extent that Johnson Controls attempts to invoke Wisconsin's accrual rules (see J. Mem. 16), then, it is wrong.

6

counts could relate back to the date of the original filing of this action (June 26, 2000), that was still nearly four years too late, for the one-year limitations clock had begun ticking by September 1995.

Johnson Controls has set forth a bizarre argument by way of attempted response: It contends that Exide somehow "waived" its argument that the Illinois statute of limitations applies here (J. Mem. 14). But that position is directly belied by Exide's original and reply memoranda, both of which expressly state otherwise (E. Mem. 8; E. Resp. 2).

As a backstop position, Johnson Controls "would ask leave either to submit a supplemental memorandum on issues such as relation back or to consider whether to voluntarily dismiss these counts and refile in Wisconsin prior to January 2002" (J. Mem. 15 n.6). But it has already been said that relation back would not salvage the claims. And as for the suggestion of voluntary dismissal, this Court is loath to countenance such a blatant effort at forum shopping--after all, Johnson Controls itself made the decision to file this action in federal court here in Illinois, rather than Wisconsin, and it is frankly offensive for any litigant to attempt to second guess such a choice <u>after</u> realizing it is a loser in its own chosen forum. Moreover, the combination of a discovery rule and a two-year limitations period (which would be the situation under Wisconsin law) would not

7

preserve the claims anyway, for the Wisconsin caselaw adduced by Johnson Controls holds that "discovery" for that purpose takes place when a plaintiff sustains the injury at issue. Both Counts V and VI are dismissed with prejudice.

### Lanham Act Claim

Count VII charges that Exide violated Lanham Act §43(a)(1)(B), which prohibits misrepresentation of one's own or another's goods or services in "commercial advertising or promotion" (see, e.g., Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734-35 (9th Cir. 1999)). Three sets of asserted misrepresentations are the predicates for that claim:

1. the October 1995 Consumer Reports article;
2. Exide's September 20, 1995 press release; and
3. Exide's statements to Sears in 1994, made during

the course of bidding for the 1994 battery supply contract. Exide has posed more than one ground for dismissal, so that an individualized analysis of its contentions is needed. It follows.

### Timeliness

Because the Lanham Act does not itself contain an explicit statute of limitations, federal courts refer to analogous state statutes of limitations in applying the corresponding presumption of laches in asserting a Lanham Act claim (see, e.g., Hot Wax,

8

Inc. v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999), looking to Wilson v. Garcia, 471 U.S. 261, 266-67 (1985)). Several courts in this district have held that the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS §505/10a(e)) is most closely analogous to the Lanham Act and have therefore applied its three year statute of limitations to bar Lanham Act claims (see, e.g., Hot Wax, Inc. v. Warsaw Chem. Co., 45 F. Supp.2d 635, 647 (N.D. Ill. 1999)).

As for the time of accrual that begins the countdown, the parties agree that any such claim "accrues when a claimant 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused'" (Zenith Elec. Corp. v. ExZEC, Inc., No. 93 C 5041, 1998 WL 59570, at *6 (N.D. Ill. Feb. 9), quoting Highsmith v. Chrysler Credit Co., 18 F.3d 434, 441 (7th Cir. 1994)). And on that score Sille v. McCann Constr. Specialties Co., 265 Ill.App.3d 1051, 1055, 638 N.E.2d 676, 680 (1st Dist. 1994) teaches:

> Rather, "wrongfully caused" refers to the point at which the injured party acquires sufficient information regarding the injury and its cause to be put on notice that further inquiry is necessary to determine whether a cause of action exists.

Here Johnson Controls' asserted injury lay in the comparative downgrading of its batteries (by inference only, because its products were not expressly mentioned) by the Consumer Reports article. And given the well-known prominence

9

and influence of that publication in shaping consumer perceptions,[9] Johnson Products cannot fairly quarrel with its having had to know of that injury promptly (indeed, its early commencement of an investigation into Kan Laboratories is conclusive evidence of that fact).

Johnson Controls' own allegations--that selfsame set of facts--likewise establish that it was on notice that further inquiry was in order to determine whether it had a claim by reason of those publications at some point in 1995 or 1996.[10] It was skeptical enough of the results reported in the Consumer Reports article to commence an investigation into the credibility of Kan Laboratories, and the results of that investigation led Johnson Controls to believe that the results in the October 1995 article may have been "biased" (¶243).

Those combined facts clearly suffice to establish both facets of the claim-accrual formulation. It does not matter

---

[9] On that score, Johnson Controls has alleged that automotive battery customers and consumers, including Penske Auto Centers, considered and relied on the October 1995 Consumer Reports article in deciding which automotive batteries to purchase (¶¶239-40). And with Exide's press release having been totally derivative from the Consumer Reports article, the two publications cannot be severed for purposes of the limitations analysis.

[10] No specific date is mentioned here because the SAC does not say when Johnson Controls launched its investigation into those results. But because the SAC says that Johnson Controls' "suspended" its investigation in 1996, it necessarily had to have begun the investigation in either 1995 or 1996.

10

that, as SAC ¶251 alleges, Johnson Controls did not actually learn that Kan Laboratories was a "front" for Exide until early in 2001. Indeed, the whole concept of inquiry notice is that Johnson Controls was on such notice in 1995 or 1996--it could well have used the ensuing years to determine who was to blame for the assertedly false nature of those results, and it already believed that the data was biased against it and in favor of Exide--whom "it did not have to search hard to find" (<u>Whitlock Corp. v. Deloitte & Touche, L.L.P.</u>, 233 F.3d 1063, 1066 (7th Cir. 2000)).

When the three year limitations period is tacked onto the 1995 or 1996 accrual date, Johnson Control's Lanham Act claim based on those publications was also filed out of time. And once again that is so even if the claim were viewed as relating back to the June 26, 2000 date when the original Complaint was filed here.

In an effort to escape that result, Johnson Controls urges that it is entitled to invoke the doctrine of equitable estoppel because Consumer Reports and Kan Laboratories denied any wrongdoing in connection with the test results reported in the October 1995 article. But our Court of Appeals has held more than once that simple denials of liability do not toll the period of limitations or estop the adverse party's invocation of a limitations defense (<u>Whitlock</u>, 233 F.3d at 1066, citing

Singletary, 9 F.3d at 1241). So Johnson Controls' attempt to call equitable estoppel into play also fails, and its Lanham Act claim based on the October 1995 article and the press release remains time-barred.

But Johnson Controls fares better (at least in Rule 12(b)(6) terms) on the timeliness of the facet of its Lanham Act claim that is grounded in Exide's misrepresentations to Sears during bidding for the 1994 battery supply contract. Although Johnson Controls suffered injury in that year when it lost out to Exide in the competition to supply Sears Batteries,[11] SAC ¶57 says it was not aware of Exide's misrepresentations to Sears until March 27, 2001 (¶57). Nothing suggests that Johnson Controls was placed on inquiry notice in 1994, nor did the 1995 publication of the Consumer Reports article or the Exide press release trigger such inquiry into any private Exide-Sears communications. And even if Johnson Controls could be argued to have been on notice of the possibility of such misrepresentations on November 19,

---

[11] No view is expressed here as to the claimed causal relationship between the asserted Exide one-to-one misrepresentations to Sears and Johnson Controls' injury (its loss of the Sears contract), a relationship that must be taken as a given in the Rule 12(b)(6) context. But if the claim now under consideration had survived (and the later discussion in this opinion explains why it has not), Johnson Controls might have found itself confronting a real irony: Because of its principal assertion that Exide was awarded the Sears battery contract due to the bribes paid to Marks, it might well have been found that the charged misrepresentations had no causal connection to Johnson Controls' corresponding injury.

12

1999 (when it first got wind of improprieties associated with the awarding of the 1994 battery supply contract) (¶153), its April 27, 2001 submission of the SAC would place its filing well within the three-year period.[12]

"Commercial Advertising or Promotion"

But SAC Count VII surmounts the timeliness hurdle only to fall flat at the next one. It will be recalled that Lanham Act §43(a)(1)(B) prohibits misrepresentation of one's own or another's goods or services in "commercial advertising or promotion" (Coastal Abstract, 173 F.3d at 734-35). In the absence of any statutory definition of those terms, several Courts of Appeals have followed the four-part definitional test first articulated in Gordon & Breach Sci. Publishers S.A. v. American Inst. of Physics, 859 F. Supp. 1521 (S.D. N.Y. 1994) (see, e.g., Coastal Abstract, id. and Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996)). That formulation is framed in these terms (Gordon & Breach, 859 F. Supp. at 1535-36):

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they

---

[12] Exide claims that Johnson Controls was aware of Exide's misrepresentations during the bidding process as early as June 1996. In so arguing, it has attempted to move beyond the pleadings by submitting articles that Exide characterizes as reporting that it "was knowingly supplying defective batteries to Sears" (E. Resp. 9). But even if this Court were to take those articles into account (in violation of Rule 12(b)(6) principles), they do not establish that Johnson Controls was aware of those reports, and more importantly they say nothing about what Exide may have represented to Sears during the bidding process.

13

> must be: (1) commercial speech; (2) by a defendant who is in
> commercial competition with plaintiff; (3) for the purpose
> of influencing consumers to buy defendant's goods or
> services. While the representations need not be made in a
> "classic advertising campaign," but may consist instead of
> more informal types of "promotion," the representations (4)
> must be disseminated sufficiently to the relevant purchasing
> public to constitute "advertising" or "promotion" within
> that industry.

As is often the case with claims of this sort, the last of the four factors is the disputed component: whether Exide's misrepresentations during the bidding for the 1994 Sears contract were "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within [the battery] industry."

Numerous courts have held--and this Court now agrees--that misrepresentations made to a single customer in the context of negotiating a transaction cannot constitute "advertising" or "promotion" in the statutory sense (see, e.g., <u>Garland Co. v. Ecology Roof Sys. Corp.</u>, 895 F. Supp. 274, 279 (D. Kan. 1995)). That is precisely what is alleged here--that Exide made misrepresentations to Sears in the context of bidding for the 1994 battery supply contract. And of course the common--and common sense--meaning of "advertising" and "promotion" connotes the public, rather than purely private, communication of information (just look at any good--or even not so good--dictionary).

Johnson Controls attempts to counter that normal approach to

14

familiar English words by citing to this statement in <u>Seven-Up</u>, 86 F.3d at 1386:

> Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act.

J. Mem. 12 stresses that language in arguing that whether Exide's misrepresentations were or were not advertising or promotion within the meaning of the Lanham Act "depends on how the automotive battery industry advertises or promotes its products"--and that then poses a question of fact inappropriate for resolution on a motion to dismiss. But nothing advanced by Johnson Controls poses a parallel to the <u>Seven-Up</u> situation, where 74 independent bottlers targeted by Coca Cola's complained-of presentation "were the only relevant potential 'consumers' or 'purchasing public'" (<u>Seven-Up</u>, 86 F.3d at 1386) for the product at issue. Instead this case comes squarely within the virtually universal holdings that look to the normal meaning of "advertising" and "promotion," rather than the <u>Seven-Up</u> type of sport.

Johnson Controls tries to wrap itself in the <u>Seven-Up</u> mantle by claiming that Sears is not one customer, but four or five, because its affiliates also sold Exide batteries (J. Mem. 13). But any such attempted artificial construct is totally unpersuasive--Sears was <u>the</u> buyer from Exide, though it may have purchased for multiple related reselling entities, and the SAC

speaks only of the asserted misrepresentations made to Sears.

In sum, Exide's asserted misrepresentations to Sears were not sufficiently disseminated to constitute "advertising" or "promotion" within the scope of the Lanham Act. SAC Count VII does not state a claim for relief either, and it too is dismissed.

## Conclusion

Even with the benefit of Rule 12(b)(6)'s generous standards, it is readily apparent that Johnson Controls has failed at the threshold as to each of SAC Counts V, VI and VII. Accordingly, Exide's motion to dismiss all of those counts with prejudice is granted.

Milton I. Shadur
Senior United States District Judge

Date: July 25, 2001